Ancil **OVERBEY,** III, Plaintiff,

v.

Margaret M. **HECKLER,** Secretary, United States Department of Health and Human Services, Defendant.

No. C–C–82–672–M.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Aug. 22, 1983.

---

George L. Fitzgerald, Charlotte, N.C., for plaintiff.

Clifford C. Marshall, Asst. U.S. Atty., Asheville, N.C., for defendant.

## OPINION AND ORDER

McMILLAN, District Judge.

From January through May of 1978, plaintiff Ancil Overbey, III, was a full-time student and received Social Security Child's Insurance Benefits on the account of his deceased stepfather, Venice King. When plaintiff graduated from college in May of 1978, his entitlement to benefits terminated. On April 13, 1979, plaintiff reported to the Social Security Administration (SSA) his annual earnings for calendar year 1978. He indicated that he had earned $1,414.81 while he was receiving benefits and $3,728.00 after his entitlement ended. Based on this report, SSA preliminarily no-

tified plaintiff that he had received an overpayment of benefits in 1978. Pursuant to 42 U.S.C. § 404 and related regulations, 20 C.F.R. Part 404, Subpart F, plaintiff sought relief from the obligation to repay any amount overpaid. In March of 1980, this request was denied and plaintiff was advised that he would be held responsible for repaying $539.60 in overpaid benefits.

Plaintiff then sought and obtained a hearing before an administrative law judge (ALJ) who determined that SSA had miscalculated its overpayment to plaintiff and that the amount overpaid was in fact $31.50. Plaintiff acknowledged that he was not "without fault" in causing an overpayment in this amount and that SSA therefore could not waive recovery. At the request of the Secretary, the Appeals Council reviewed the ALJ's decision and modified it so as to reinstate SSA's determination. Plaintiff then instituted this action under 42 U.S.C. § 405(g) for review of the Secretary's final decision. The case was heard on April 14, 1983, on the parties' cross motions for summary judgment.

This case involves a dispute over the effect of the 1980 amendments to the Social Security Act, Pub.L. No. 96–473, 94 Stat. 2263, codified at 42 U.S.C. § 403(f). The Act has always contained some limitation on the earnings a beneficiary may receive without suffering a loss or reduction of benefits. Prior to the 1977 amendments to the Act, the Secretary administered a combined monthly-annual test for determining whether a beneficiary's earnings would affect his or her level of benefits. Under that test, (1) a person with no "excess earnings" would incur no reduction in benefits; and (2) even if a person had "excess earnings," he or she would incur no reduction in benefits for any month in which his or her earnings for that month did not exceed a specified monthly amount. At all times relevant to this action, the term "excess earnings" has been defined (for taxable years ending after December 1972) as fifty percent of a person's "earnings ... for the year which are in excess of the product obtained by multiplying the number of

months in that taxable year by the [applicable] monthly exempt amount." 20 C.F.R. § 404.430(a).

In 1977, Congress amended the Act by eliminating the monthly component of the excess earnings test [clause (2) above] except in the first year of retirement. Pub.L. No. 95–216; *see* Report of the Staff of the Subcommittee on Social Security, House Ways and Means Committee, *reprinted in* [1979 Transfer Binder] Unemp.Ins.Rep. (CCH) ¶ 16,304. The elimination of the monthly test had a harsh effect on beneficiaries entitled to child's (including student's) benefits in the year their benefits terminate and they go to work. As the House Ways and Means Committee recognized:

> Generally, these beneficiaries are likely to enter the work force and have substantial earnings in the year their benefits end. If these earnings are over the annual exempt amount, the benefits they already received in the year can become overpayments and have to be repaid. This occurs because the monthly test is not available to them, so that their earnings after benefits end can result in reduction of benefits due them earlier in the year. Frequently, these beneficiaries do not know at the beginning of the year whether they will have earnings later in the year. Requiring them to repay social security benefits received earlier in the year discourages them from working.

H.R.Rep. No. 96–537, 96th Cong., 1st Sess. (1979), *reprinted in* [1979 Transfer Binder] Unempl.Ins.Rep. (CCH) ¶ 16,499. Congress therefore amended the Act again in 1980 to restore the monthly earnings test for child beneficiaries in the year their benefits end. That is, Congress provided that in a child beneficiary's termination year, even if he or she has "excess earnings" as defined above, there will be no reduction in benefits for any month in which his or her earnings for that month did not exceed a specified monthly amount ($270.00 in 1978). 42 U.S.C. § 403(f)(1), as amended. (The amendment was made retroactive to January 1978.)

The ALJ, whose decision plaintiff asks the court to reinstate, took the position that the 1980 amendments changed the method for computing "excess earnings" in cases such as this. Specifically, the ALJ held that under the amendments, a child beneficiary's "earnings after entitlement has terminated are ignored and earnings during entitlement are considered on a month by month basis." Tr. 12. Applying this method, the ALJ found (1) that plaintiff's earnings in March 1978 ($298.00) and April 1978 ($305.00) exceeded the monthly exempt amount of $270.00; (2) that plaintiff's benefits for those months should be reduced by one dollar for every two dollars of earnings over the monthly exempt amount; and (3) that plaintiff thus received an overpayment of $14.00 in March and $17.50 in April.

As the Appeals Council held, however, the statute as amended simply does not say what the ALJ said it does. The Appeals Council correctly stated that under the 1980 amendments

> deductions [are not] imposed against an individual's benefits in any month during which he did not engage in self-employment and did not render services for wages of more than the applicable monthly exempt amount ($270 in 1978). No where [sic] in the Social Security Act is there a provision for excluding earnings received after entitlement is terminated from the definition of "excess earnings" for deduction purposes. The 1980 amendments did not change the method of determining "excess earnings." The amendments merely changed the method of charging "excess earnings" against monthly benefits in certain cases.

Tr. 7.

In accordance with this reading of the statute, the Appeals Council computed plaintiff's excess earnings for 1978 in the manner described at page 3, *supra:*

[.50] [1978 earnings − (12 × $270)] =

[.50] [$5142 − $3240] =

[.50] [$1902] = $951

The Appeals Council held that, regardless of these "excess earnings," plaintiff's benefits for January, February and May of 1978 could not be reduced because plaintiff's earnings in those months did not exceed the monthly exempt amount. As to March and April, however, when plaintiff's earnings

*did* exceed the monthly exempt amount (albeit by a small amount), the Appeals Council held that the Secretary could properly charge plaintiff's "excess earnings" against the full amount of his benefits for those months. As a result, concluded the Appeals Council, plaintiff received an overpayment in 1978 equal to the amount of his benefits for March and April ($539.60). [NOTE: There is no dispute that under the 1977 amendments the Secretary would have been able to charge plaintiff's "excess earnings" against his benefits for *each* month of 1978 and thereby recoup as an overpayment the entire $951.00.]

The Appeals Council's understanding and application of the 1980 amendments is entirely consistent with both the unambiguous language of the amendments and the legislative history.

Under the 1980 amendments, then, a person who in a particular month exceeds the monthly exempt amount by a few dollars may lose all of his or her benefits for that month as a result of earnings after the person's benefits have ended. This harsh result seems inconsistent with the desire of Congress not to discourage beneficiaries from going to work when their benefits end. No doubt the ALJ's strained reading of the statute was motivated by a desire to cure this inconsistency. However, Congress wrote the statute in plain, if convoluted, English and it is up to them, not the ALJ or me, to decide whether it should be rewritten.

Finally, there is the question whether the Secretary has waived the right to recover part of the overpayment made to plaintiff. Section 204(b) of the Act, 42 U.S.C. § 404(b) provides that

> In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

*See also* 20 C.F.R. §§ 404.506–.512. Plaintiff conceded and the ALJ found that plain-

tiff was not "without fault" in causing an overpayment in the amount of $31.50 and that the Secretary could not waive recovery of that amount. Tr. 13. The Appeals Council "concur[red] in and adopt[ed] the administrative law judge's finding that recovery of the overpayment may not be waived because the claimant is not 'without fault' in causing and accepting the overpaid funds." Tr. 8. It does not necessarily follow, however, that because plaintiff was not "without fault" in connection with the $31.50 that the ALJ found had been overpaid, that he was also not "without fault" as to the additional $508.10 that was in fact overpaid. It seems very likely to the court that plaintiff was "without fault" as to this part of the overpayment and that it should not be recovered by the government. This determination should be made in the first instance by the Secretary.

IT IS THEREFORE ORDERED that this case be and it is HEREBY REMANDED to the Secretary for further proceedings consistent with this opinion.